Rene L. Valladares
Federal Public Defender
Nevada State Bar No. 11479
*Margaret Lambrose
Assistant Federal Public Defender
Nevada State Bar No. 11626
411 E. Bonneville Ave., Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577
Maggie_Lambrose@fd.org

*Attorney for Petitioner Thomas Cash

## United States District Court
## District of Nevada

Thomas Cash,

        Petitioner,

    v.

Gabriela Najera, *et al.*,

        Respondents.

Case No. 2:22-cv-01345-RFB-DJA

**Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody**

(Not sentenced to death)

# Contents

Introduction ............................................................................................ 3

Procedural History ................................................................................. 4

A.    Thomas Cash kills Ezekiel Devine in self-defense. ...................... 4

B.    State trial and direct appeal proceedings. ................................... 8

C.    State post-conviction proceedings. .............................................. 9

D.    Federal proceedings. ................................................................... 10

28 U.S.C. § 2254 is Unconstitutional ................................................... 10

Claims for Relief ................................................................................... 10

Prayer for Relief.................................................................................... 23

Declaration Under Penalty of Perjury ................................................. 24

# Introduction

Thomas Cash is spending his life in prison for protecting himself and his pregnant stepdaughter after his stepdaughter's abusive boyfriend and his friend showed up at Mr. Cash's home one evening and assaulted Mr. Cash and the young woman. During the fight, as Mr. Cash tried to get the abusive boyfriend away from his stepdaughter, the boyfriend's friend punched Mr. Cash in the face with what Mr. Cash believed was a weapon. The man hit Mr. Cash so hard that Mr. Cash fell to the ground and began gushing blood. In self-defense, Mr. Cash used a small work knife he had in his pocket and stabbed the man one time. The man ultimately died from the single stab wound.

The Clark County District Attorney's Office charged Mr. Cash with open murder. He proceeded to trial under the theory that he acted in self-defense and defense of his stepdaughter. On the third day of trial, Mr. Cash's defense lawyer suffered a medical emergency that required hospitalization. Nevertheless, his lawyer failed to request a mistrial due to his medical condition, and the trial proceeded just days after his hospitalization.

The jury ultimately found Mr. Cash not guilty of first-degree murder and returned a verdict of guilty as to second-degree. The jury also returned a verdict of not guilty of battery with intent to kill. Despite the jury's split verdict, former Eighth Judicial District Court Judge Douglas Smith adjudicated Mr. Cash as a habitual criminal based on decades-old prior convictions and sentenced him to life without the possibility of parole.

Unless this Court grants relief, Mr. Cash will die in prison even though his case was littered with constitutional errors. His trial counsel, Kenneth Long, failed to call witnesses and elicit testimony to support Mr. Cash's self-defense theory.[1] Mr. Cash's trial counsel then failed to protect Mr. Cash against the improper tactics the prosecutors deployed during closing arguments and failed to move for a judgment of acquittal when the State failed to present sufficient evidence to support a second-

---

[1] Mr. Long is now deceased.

degree murder conviction and failed to prove beyond a reasonable doubt that Mr. Cash did not act in self-defense.

For these reasons, and others, Mr. Cash respectfully requests this Court grant his petition for a writ of habeas corpus.

### PROCEDURAL HISTORY

**A.    Thomas Cash kills Ezekiel Devine in self-defense.**

On December 11, 2017, Kyriell Davis went to pick up his daughter from his girlfriend, Brittney Turner, with whom he had a volatile relationship.[2] Mr. Davis asked his roommate, Ezekiel Devine, to go with him to pick up the child.[3] At the time, Brittney Turner was six months pregnant with Mr. Davis's second child and was living with her mother (Antoinette), her stepfather (Thomas Cash), her sisters (Angel Turner and Payton Cash), and her cousin (Tamisha Kinchron).

When Mr. Davis and Mr. Devine arrived at Mr. Cash's home, Mr. Cash had just returned home from work as an HVAC technician and was upstairs in his bedroom wrapping Christmas presents for his family. Angel Turner was also upstairs in her bedroom when she looked out the window to see Mr. Davis assaulting Brittney.[4] Angel Turner ran to Mr. Cash's bedroom and asked him to help Brittney because Mr. Davis was hurting her.[5] Mr. Cash then ran outside to the front yard to help Brittney and Angel followed him outside.[6]

Once outside, Mr. Cash grabbed Mr. Davine to get him off Brittney.[7] The two men engaged in a headlock and started fighting.[8] According to Angel, at that point

---

[2] Tran. 6/25/2018 at 119-123.

[3] Id. at 125.

[4] Tran. 6/26/2018 at 107-109.

[5] Id.

[6] Id. at 110.

[7] Id.

[8] Id.

Mr. Devine got out of the car and joined Mr. Davis in the fight against Mr. Cash.[9] The fight then turned into a two-against-one struggle, with Mr. Davis and Mr. Devine punching Mr. Cash.[10] During the fight, Angel Turner heard Mr. Davis yell at Mr. Devine to "go get his thing out of the car."[11] Angel Turner believed Mr. Davis was referencing a gun.[12]

Tamisha Kinchron was also at Mr. Cash.s home that evening. She was downstairs watching T.V. when she heard Angel Turner scream to Mr. Cash, "that boy" (Mr. Davis) was "jumping on her sister."[13] Tamisha saw Mr. Cash run downstairs and go out the front door.[14] Tamisha followed him outside and saw Mr. Cash approach Mr. Davis because Mr. Davis "had Brittney on top of the car."[15] Tamisha then saw Mr. Davis swing at Mr. Cash.[16] Mr. Cash and Mr. Davis then began swinging at each other, with some punches landing.[17] According to Tamisha, she then saw Mr. Devine get out of the car and join Mr. Davis in the fight against Mr. Cash, at which point both Mr. Devine and Mr. Davis began attacking Mr. Cash.[18] Tamisha also heard Mr. Davis say, "Bring my shit," referencing a gun.[19] She also heard Mr. Davis say that he was "going to kill this old mother fuckin'" (referencing Mr. Cash) and that he was going to "blow this shit up."[20]

---

[9] Id. at 111.

[10] Id.

[11] Id. at 114-115.

[12] Id.

[13] Tran. 6/26/2018 at 162-3.

[14] Id. at 164.

[15] Id.

[16] Id. at 167.

[17] Id. at 167-8.

[18] Id. at 170, 196.

[19] Id. at 169.

[20] Id. 174.

Brittney Turner also testified.[21] According to Brittney, she and Mr. Davis were arguing when he arrived at her house as he was threatening her that she would not see their daughter, Londyn, anymore.[22] Mr. Davis was grabbing Brittney and holding her arms.[23] At that point, Brittney was scared of Mr. Davis.[24] Mr. Cash then came out to the driveway and Mr. Davis and Mr. Cash engaged in a headlock.[25] At that point, Mr. Devine got involved in the fight and, according to Brittney, she tried to pull Mr. Davis away from the altercation.[26] While she was holding Mr. Davis back, the fight turned into one between Mr. Cash and Mr. Devine and Mr. Davis yelled that he was going to get a gun or shoot somebody.[27] According to Brittney, during the fight Mr. Devine punched Mr. Cash in the face, damaging Mr. Cash's nose and knocking him to the ground.[28]

Mr. Cash later told police that Mr. Devine punched Mr. Cash so hard that Mr. Cash believed he was hit with a weapon.[29] Mr. Cash also told the police that he stabbed Mr. Devine after that blow to his face because he didn't want to get hit again with whatever weapon Mr. Devine had in his hand.[30]

However, the State's star witness, Mr. Davis gave a much different account of the events that evening than all the other percipient witnesses.[31] According to Mr. Davis, it was Brittney who was angry with him as soon as he arrived at Mr. Cash's

---

[21] Tran. 6/25/2018 at 194.

[22] Id. at 202.

[23] Id.

[24] Id.

[25] Id at 206-207.

[26] Id. at 207-210.

[27] Id. at 232-233.

[28] Id. at 252-3.

[29] Tran. 6/27/2018 at 16-17.

[30] *See* Cash Voluntary Statement, 12/12/2017 at 15-18.

[31] Tran. 6/25/2018 at 119.

home that night.[32] Brittney threatened Mr. Davis that he would never see their daughter Londyn again and made other nasty comments to him. Mr. Davis responded by "laughing because [he] thought it was funny."[33] According to Mr. Davis, Brittney continued to scream in his face, so he leaned away from her because he was not going to get into an argument with her at her mom's house.[34] Mr. Davis testified he never assaulted Brittney that evening; rather, he and Brittney had their arms on each other's shoulders, and Mr. Davis "slowly" pushed her away from him.[35]

Mr. Davis testified that Mr. Cash then ran out of the house and asked Brittney if Mr. Davis was hurting her.[36] Brittney told Mr. Cash she was fine, and that Mr. Cash needed to "stay out of her business because she was grown."[37]  Mr. Davis testified that he then took Londyn from Brittney because Brittney was yelling at Mr. Cash.[38] Mr. Davis testified that as he was putting Londyn in the car seat, Mr. Cash swung at him and Mr. Davis tripped.[39] The men then engaged in a headlock and, according to Mr. Davis, there were no punches thrown after that.[40]

According to Mr. Davis, Mr. Devine then ran over to the men and tried to break them up.[41] Mr. Davis testified that he did not see Mr. Devine hit Mr. Cash that night.[42] However, Mr. Davis did see that Mr. Cash had something in his hand

---

[32] Id. at 131-132.

[33] Id. at 132.

[34] Id. at 133.

[35] Id. at 133-135.

[36] Id. 135.

[37] Id. at 135-136.

[38] Id. at 136.

[39] Id. at 136-137.

[40] Id.

[41] Id. at 141-142.

[42] Id. at 169.

and told Mr. Devine to watch out.[43] After that, Mr. Devine dropped to the ground, and Mr. Cash ran to the house.[44] Mr. Davis tried to chase Mr. Cash into the house and attempted to kick in the front door, but he wasn't successful, so he went back to Mr. Devine and saw that he was bleeding from his chest.[45]

Mr. Devine ultimately died from a single stab wound to his chest and Mr. Cash voluntarily turned himself in to the police and provided them with a statement about the events that evening.[46]

## B.    State trial and direct appeal proceedings.

Thomas Cash was charged with murder for stabbing Ezekiel Devine to death on December 11, 2017.[47] Mr. Cash was represented by Kenneth W. Long at trial.

Eighth Judicial District Court Judge Douglas Smith presided over the 10-day trial, which began on June 18, 2018, and concluded on June 28, 2018. On Thursday, June 21, 2018 (the third day of the trial), the court informed Mr. Cash that Mr. Long had been admitted to the hospital for surgery and that the trial would have to be postponed to the following Monday.[48] The court then told the jury that Mr. Long was in surgery and the trial would have to be continued to the following Monday.[49]

Despite the fact Mr. Cash's trial lawyer suffered a medical emergency mid-trial, the trial court did not declare a mistrial, nor did Mr. Long seek one. The trial continued on Monday, June 25, 2018. The jury ultimately found Cash guilty of second-degree murder with use of a deadly weapon and not guilty of battery with

---

[43] Id. at 142.

[44] Id.

[45] Id.

[46] Tran. 6/27/2018 at 17.

[47] *See* Amended Information, 4/19/2018.

[48] Tran. 6/21/2018 at 2.

[49] Id.

intent to kill.[50] Judge Douglas Smith sentenced Cash to life without the possibility of parole under the habitual criminal statute.[51] Cash appealed.[52]

Attorney Brian Rutledge represented Cash on appeal. He raised two issues in his opening brief: (1) "There was insufficient evidence produced by the State to meet their burden of proving the Defendant did not act in self-defense;" and, (2) "The District Court Judge abused his discretion in adjudicating Cash a Habitual Criminal and imposing a sentence of Life Without the Possibility of Parole."[53] The Nevada Supreme Court affirmed the conviction on September 12, 2019.[54]

### C. State post-conviction proceedings.

Cash filed a timely, pro se Petition for Writ of Habeas Corpus (Post-Conviction) along with supporting exhibits and a Memorandum of Points and Authorities on or about August 3, 2020.[55] Cash alleged numerous claims of ineffective assistance of trial and appellate counsel. Cash was not granted the assistance of counsel during his post-conviction proceedings and was not granted an evidentiary hearing, despite requesting both.[56] The court denied the petition and accompanying motions. Cash then retained Jean Schwartzer for the sole purpose of appealing the district court's denial of his request for an evidentiary hearing.[57]

The Nevada Supreme Court rejected Mr. Cash's request and affirmed the conviction on March 4, 2022.[58] Remittitur issued on August 4, 2022.

---

[50] *See* Verdict, 6/28/2018.

[51] *See* Judgment of Conviction, 8/23/2018.

[52] *See* Notice of Appeal, 9/19/2018

[53] Opening Brief, 3/14/2019.

[54] *See* Order of Affirmance and Remand to Correct Clerical Error, 9/12/2019.

[55] *See* Petition for Writ of Habeas Corpus and Memorandum of Points and Authorities, August 3, 2020.

[56] Tran. 10/7/2020 at 2.

[57] *See* Notice of Appeal, 11/09/2020; *see also* Notice of Appearance, Jean Schwartzer, March 3, 2021.

[58] *See* Order of Affirmance, 03/04/2022.

### D.     Federal proceedings.

Mr. Cash next sought federal habeas relief. He mailed his timely, pro se petition on or about January 26, 2022. This Court granted Mr. Cash's request to appoint counsel and appointed the Federal Public Defender's Office to represent him. This Amended Petition follows.

**28 U.S.C. § 2254 IS UNCONSTITUTIONAL**

The standard of review in 28 U.S.C. § 2254(d) violates the U.S. Constitution, specifically the Suspension Clause (Article One, Section Nine, clause two); fundamental principles of separation of powers (Articles One, Two, and Three); the ban on cruel and unusual punishments (Amendments Eight and Fourteen); and the guarantee of due process (Amendments Five and Fourteen). *But see Crater v. Galaza*, 491 F.3d 1119 (9th Cir. 2007) (rejecting some of these arguments). Accordingly, this Court should review each of the claims presented here de novo.

**CLAIMS FOR RELIEF**

**Ground One: Mr. Cash's trial attorney performed ineffectively when he failed to call and interview favorable witnesses, and failed to elicit favorable testimony at trial, all in violation of Mr. Cash's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.**

**Statement of exhaustion:**

Mr. Cash exhausted subclaims (A) and (C) (or similar subclaims) during the post-conviction proceedings in state court. Mr. Cash has not fairly presented sub-claims (B) and (D) to the Nevada state courts.

**Statement in support of claim:**

The Sixth Amendment guarantees criminal defendants the effective assistance of counsel at trial. The standard for evaluating an ineffectiveness claim for trial counsel is well-settled. *Strickland v. Washington*, 466 U.S. 668 (1984), requires a showing that counsel's performance fell below an objective standard of professional care, and that there was a reasonable probability of a different outcome absent the deficient performance.

The Supreme Court has held, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland,* 466 U.S. at 690–91). "Pretrial investigation and preparation are the keys to effective representation of counsel. Courts have repeatedly stressed the importance of adequate consultation between attorney and client, the interviewing of important witnesses, and adequate investigation of potential defenses." *United States v. Tucker*, 716 F.2d 576, 581 (9th Cir. 1983) (internal citations omitted).

### A.   Mr. Cash's trial counsel was ineffective for failing to call Sandi Cash to testify in Mr. Cash's defense at trial.

Mr. Cash's trial counsel was ineffective for failing to call Sandi Cash to testify in Mr. Cash's defense at trial. Sandi Cash was at Mr. Cash's home on the night of the incident, and she was a percipient witness to the events that evening. Yet, Mr. Cash's trial counsel, Ken Long, never interviewed Sandi about what she witnessed that evening, nor was she called to testify at trial.[59] Had Sandi Cash testified on behalf of Mr. Cash at trial, she would have given testimony that would have supported Mr. Cash's defense that he acted in self-defense and defense of Brittney when he engaged with Mr. Davis and Mr. Devine. Her testimony also would have directly undercut Mr. Davis's credibility.

Sandi Cash would have provided the following testimony. On the night in question, Sandi Cash was sleeping when Brittney woke her up.[60] Brittney asked Sandi Cash to help her hand off her young daughter Londyn to Mr. Davis so that

---

[59] *See* Petition for Writ of Habeas Corpus and Memorandum of Points and Authorities, August 3, 2020, at 37.

[60] Id.

Mr. Davis "wouldn't do anything" to Brittney.[61] Sandi agreed to help Brittney.[62] When the women got outside, Brittney asked Mr. Davis why he brought Mr. Devine to Brittney's house because Brittney did not like Mr. Devine.[63] Mr. Davis then began screaming at Brittney and grabbed her by the hood of her sweater.[64] At that point, Sandi Cash stepped in.[65] Sandi then heard Mr. Davis tell Brittney to "go get anyone she wanted to fight Mr. Davis" because he would "shoot up the whole house."[66]

When Sandi Cash tried to get in between Mr. Davis and Brittney, Mr. Davis reached over Sandi while trying to grab Brittney and scratched Sandi in the process.[67] Sandi then told Brittney go back inside the house with the baby.[68] According to Sandi Cash, Mr. Davis sat outside of Mr. Cash's home for another 5 to 8 minutes and continuously called Brittney's phone until she finally went back outside, ending in the confrontation between Mr. Davis, Mr. Devine, and Mr. Cash.[69]

Long's failure to interview Sandi Cash was a significant omission that rendered his performance deficient. Sandi was a percipient witness to the events that night. Not only did she witness Mr. Davis act violently toward Brittney, but she was also a victim of his assaultive conduct when he scratched her as she tried to protect Brittney. Sandi also witnessed Mr. Davis's threats to harm others in the home when he said he "would shoot it up." Such testimony would have been directly

---

[61] Id.

[62] Id.

[63] Id.

[64] Id.

[65] Id.

[66] Id.

[67] Id.

[68] Id.

[69] Id.

relevant to show Mr. Davis's demeanor was combative and threatening that evening.

Long's deficient performance for failing to call Sandi Cash as a witness prejudiced Mr. Cash. Witness testimony from Sandi Cash would have described the violent and threatening nature of Mr. Davis's conduct that evening. Indeed, the fact that Sandi Cash was assaulted by Mr. Davis just minutes before Mr. Cash went outside to help Brittany would have supported Mr. Cash's defense that when he went up against Mr. Davis and Mr. Devine that evening, he was acting in self-defense and defense of Brittney.

Long's deficient performance also prejudiced Mr. Cash because Sandi Cash's testimony would have significantly damaged Mr. Davis's credibility. Indeed, at trial, Mr. Davis testified that it was Brittney Turner and Mr. Cash who were combative and aggressive that evening.  However, Sandi Cash would have provided a totally different account of Mr. Davis's conduct and demeanor, including the fact that Mr. Davis scratched Sandi Cash when she tried to step in to help Brittney get away from him and the fact he threatened to "shoot up" the house. Given Mr. Davis was the State's star witness, discrediting his testimony would have likely changed the outcome of the trial.

**B.    Mr. Cash's trial counsel was ineffective for failing to interview Tamisha Kinchron prior to trial and for failing to elicit exculpatory testimony from her at trial.**

Mr. Cash's trial counsel was also ineffective for failing to interview Tamisha Kinchron before she testified at trial.[70] Had Mr. Long interviewed Tamisha he would have learned that Mr. Cash told Tamisha that he believed Mr. Devine had a hit him with the butt of a gun when he ran back into the house after the stabbing. That testimony would have been highly relevant for two reasons: (1) Mr. Cash's statement to Tamisha immediately after the stabbing that he believed Mr. Devine hit him with the butt of a gun would have corroborated Mr. Cash's statement to the

---

[70] Exhibit A "Tamisha Kinchron" Declaration.

police that he believed Mr. Devine hit him with a weapon; and (2) Mr. Cash's statement to Tamisha that he believed Mr. Devine had a gun would have corroborated  Mr. Cash statement to the police about why he left the house after the stabbing—because he thought Mr. Davis was going to shoot him.

The fact Mr. Long failed to interview Tamisha prior to calling her as a witness at trial rendered his performance deficient as there is no strategic reason why a lawyer would not interview a precipitant witness prior to that witness testifying at trial. Mr. Long's deficient performance prejudiced Mr. Cash as Tamisha could have provided key information explaining why Mr. Cash believed it was necessary to stab Mr. Devine (because he believed Mr. Devine hit him with a weapon) and why Mr. Cash left the house after the stabbing (because Mr. Cash believed Mr. Davis had a gun).

**C.    Mr. Cash's trial counsel was ineffective for failing to interview Angel Turner prior to trial and for failing to elicit helpful testimony from her at trial.**

Mr. Cash's trial counsel was ineffective for failing to interview Angel Turner prior to trial and for failing to elicit testimony from her at trial that would have supported Mr. Cash's theory of self-defense. At the preliminary hearing, Angel Turner testified that during the altercation in the front yard, she heard Mr. Davis threaten Brittney, telling her that she would never see their daughter, Londyn again.[71] However, Mr. Cash's trial lawyer failed to elicit that testimony from Angel at trial despite it supporting Mr. Cash's theory that when he went out to the driveway that evening, he intended to protect Brittney from Mr. Davis because Mr. Davis was threatening Brittney. Because Angel Turner was a key witness who corroborated Mr. Cash's self-defense theory, Mr. Cash's trial counsel should have met with her prior to trial to review her preliminary hearing testimony and discuss her trial testimony to ensure that he elicited all helpful testimony from her at trial.

---

[71] Tran. 2/5/2018 at 110.

Trial counsel's failure to do so amounted to deficient performance that prejudiced Mr. Cash.

### D. Mr. Cash's trial counsel was ineffective for failing to fully cross-examine LVMD detective Matthew Gills during the State's rebuttal case.

The prosecution called Detective Gills in their rebuttal case to testify about Mr. Cash's voluntary statement to the police after the stabbing. Mr. Cash's trial counsel was ineffective for failing to elicit helpful statements that Mr. Cash made to the detectives. During his examination, Detective Gillis testified that Mr. Cash told the police that Mr. Devine did not hit him with a gun, a knife, or brass knuckles.[72] However, that testimony was inconsistent with Mr. Cash's statement to the police. From his statement, it was clear that Mr. Cash believed he was hit with a weapon, but he was unsure about what type of weapon it was because he was not looking at Mr. Devine's and Mr. Davis's hands when he was hit.[73] Detective Gills also testified that Mr. Cash told him that the reason Mr. Cash stabbed Mr. Devine was "because he did not want to get hit again."[74] However, that was also an incomplete account of Mr. Cash's statement. Mr. Cash, in fact, told Detective Gills that he stabbed Mr. Devine because he did not want to get hit again with *the weapon* he believed Mr. Devine had in his hand.[75] Trial counsel's failure to fully cross-examine detective Gills about Mr. Cash's statement to police, amounted to deficient performance that prejudiced as Mr. Cash provided numerous exculpatory statements during his voluntary interview that were not elicited during detective Gills's cross-examination.

For these reasons, this Court should grant relief and order a new trial.

---

[72] Tran 6/27/2018 at 9, 17.

[73] *See* Voluntary Statement at 15-16.

[74] Tran 6/27/2018 at 19.

[75] Voluntary Statement at 17-18.

**Ground Two: Mr. Cash's trial counsel was ineffective when he failed to object to the prosecutor's improper closing argument.**

**Statement of exhaustion:**

This claim (or a similar claim) was exhausted on direct appeal and in state post-conviction proceedings.

**Statement in support of claim:**

Deputy District Attorneys Bluth and DiGiacomo committed repeated acts of misconduct during the State's closing argument and Mr. Cash's trial counsel failed to object to each one rendering him ineffective. Specifically, during closing arguments, the prosecutors: (1) improperly expressed their opinions about Mr. Cash's guilt, (2) improperly shifted the burden of proof onto Mr. Cash, and (3) improperly vouched for their star witness, Mr. Davis. Mr. Cash was deprived of effective assistance of counsel when his trial counsel, Ken Long, failed to object to each of these improper tactics deployed by the State.

At the beginning of the State's closing argument, DDA Bluth improperly expressed her opinion of Mr. Cash's guilt when she told the jury that it could not find Mr. Cash guilty of the lesser-included offense of voluntary manslaughter. Specifically, she declared to the jury, "[i]f you look at the three options in this case, voluntary manslaughter is not one of them. *For you, this decision is between first-degree and second-degree murder*. The facts of this case do not match the law of voluntary manslaughter."[76]

Then, during the State's rebuttal closing, DDA DiGiacomo told the jury that it could *only* find Mr. Cash guilty of first or second-degree murder and that Mr. Cash's behavior showed he was "just trying to get away with murder."[77] At the end of her rebuttal closing, DDA DiGiacomo again improperly expressed her opinion of Mr. Cash's guilt when she told the jury that it could not find Mr. Cash guilty of voluntary manslaughter. She concluded, "[t]here is evidence here of premeditation,

---

[76] Tran. 6/27/2019 at 57. (emphasis added).

[77] Id. at 83.

16

deliberation, and intent to kill. Absolutely. But if you find one of those three are not there, then it's second-degree murder.  This is murder. The Defendant murdered Ezekiel Devine, plain and simple. *This is not voluntary manslaughter*."[78]

"The rule that a prosecutor may not express his personal opinion of the defendant's guilt or his belief in the credibility of witnesses is firmly established." *United States v. McKoy,* 771 F.2d 1207, 1210–11 (9th Cir.1985). A prosecutor may not "express [her] opinions of the defendant's guilt" or "denigrate the defense as a sham." *United States v. Hermanek*, 289 F.3d 1076, 1098 (9th Cir. 2002). A "prosecutor has no business telling the jury [her] individual impressions of the evidence." *United States v. Kerr,* 981 F.2d 1050, 1053 (9th Cir. 1992). Doing so places the prestige of the government behind the state's evidence frustrating the jury's role as an independent arbiter of credibility.

The prosecutor's repeated reference to their personal opinions of the evidence was improper, especially when they told the jury that Mr. Cash was "just trying to get away with murder" and when they repeatedly told jury that it could not return a voluntary manslaughter verdict, which was untrue. *See Hermanek*, 289 F.3d at 1098 ("[P]rosecutors' arguments not only must be based on facts in evidence, but should be phrased in such a manner that it is clear to the jury that the prosecutor is summarizing evidence rather than inserting personal knowledge and opinion into the case.").

The Assistant District Attorneys also improperly shifted the burden of proof onto Mr. Cash, arguing that he had not proven he acted in self-defense when it was the State's burden to prove beyond a reasonable doubt that Mr. Cash did not act in self-defense. ADA Bluth told the jury "[t]his case is very simple, if you believe the Defendant was the original aggressor, he is not entitled to self-defense. He is not entitled to self-defense...There is no evidence in this case that [Cash] ever made a good faith effort to stop this struggle. He could have retreated."[79]

---

[78] Id. at 101.

[79] Id. at 63.

17

During the State's rebuttal closing, ADA DiGiacomo again shifted the burden of proof for self-defense onto Mr. Cash, while also misstating the evidence supporting Mr. Cash's self-defense theory. Specifically, ADA DiGiacomo told the jury, "for you to believe this was self-defense, you'd have to believe that Brittney was in imminent danger and Kyriell [Davis] was attacking her to the point that she could lose her life. You have to believe that. Well, guess what, it's not self-defense."[80] This statement was highly prejudicial because ADA DiGiacomo told the jury it could only find that Mr. Cash acted in self-defense if it believed that Mr. Davis attacked Brittney. That was simply not the case. To determine whether Mr. Cash acted in self-defense the jury was to consider whether *Mr. Devine* was the initial aggressor when he approached Mr. Cash—and punched him in the face with what Mr. Cash believed was a weapon—and whether Mr. Cash believed he was in imminent danger at the time of *that* attack.

ADA DiGiacomo also improperly vouched for Mr. Davis's credibility during rebuttal closing argument. At one point she told the jury, "...who is in this fight telling you what happened? It's Kyriell. And you can tell too he's telling you what really happened because he's not—embellishing or whatnot. He says exactly what happened."[81]

Improper vouching occurs "when the prosecutor places the prestige of the government behind the witness by providing personal assurances of the witness's veracity." *United States v. Kerr*, 981 F.2d 1050, 1053 (9th Cir. 1992). Where vouching bolsters critical evidence, the possibility of prejudicial effect is amplified. *Id.*, *citing United States v. Roberts*, 618 F.2d 530, 533 (9th Cir. 1980). That was especially the case here as the State's prosecution against Mr. Cash rested almost entirely on Mr. Davis whose credibility was directly at issue considering he caused the chaos that occurred that evening. Indeed, Mr. Davis showed up at Mr. Cash's home that night and refused to leave, he assaulted Brittney Turner, Sandi

---

[80] Id. at 98.

[81] Id. at 88.

18

Cash, and Mr. Cash. He threatened to "shoot up the home." He was the reason Mr. Devine engaged in the fight with Mr. Cash.  There is no doubt that Mr. Davis had every reason to lie to minimize his role in the turmoil and lie about Mr. Devine's participation in the assault against Mr. Cash because he felt guilty for engaging in such reckless conduct that resulted in Mr. Devine's death.

ADA DiGiacomo's argument appealed to the jury to trust her opinion, and her personal opinion of Mr. Devine was that he was telling the truth. As a result, the jury was encouraged "to give weight to the prosecutor's opinion in assessing the credibility of witnesses, instead of making the independent judgment of credibility to which the defendant is entitled." *United States v. McKoy*, 771 F.2d 1207, 1211 (9th Cir. 1985).

The record abundantly demonstrates that the prosecution's closing argument contained repeated inappropriate comments that should have demanded multiple objections from Mr. Cash's trial counsel. In a case where the State's evidence was weak and where witness credibility was paramount, trial counsel had no legitimate strategic reason for failing to object. Counsel's failure to object, therefore, undoubtedly fell below the objective standard of reasonableness. The question of prejudice is also easily answered in Mr. Cash's favor. This case was almost entirely a credibility battle. To convict Mr. Cash, the jury had to believe Mr. Davis about the circumstances surrounding the altercation. The prosecutors' decision to vouch for Mr. Davis and provide their personal opinions of Mr. Cash's guilt (both by improperly commenting on the evidence and shifting the burden) undoubtedly prejudiced Mr. Cash.  Trial counsel's failure to object to these improper comments violated Mr. Cash's right to effective assistance of counsel. This Court should grant relief and order a new trial.

**Ground Three: Mr. Cash's appellate counsel was ineffective when he failed to properly raise the prosecutorial misconduct claim on direct appeal.**

**Statement of exhaustion:**

Mr. Cash exhausted this claim (or a similar claim) in his state post-conviction proceedings.

**Statement in support of the claim:**

As Ground Two explains, the State made multiple inappropriate comments during closing arguments, yet appellate counsel failed to properly raise the claim, and the Nevada Supreme Court refused to consider it on the merits. Had Mr. Cash's appellate attorney properly litigated each of the improper statements, there's a reasonable probability the Nevada Supreme Court would have granted relief.

**Ground Four: There was insufficient evidence to convict Mr. Cash of second-degree murder and the State failed to prove beyond a reasonable doubt that Mr. Cash did not act in self-defense when he killed Mr. Devine in violation of Mr. Cash's due process rights.**

**Statement of exhaustion:**

This claim (or a similar claim) was exhausted on direct appeal.

**Statement in support of the claim:**

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). To convict Mr. Cash of second-degree murder the State had to prove beyond a reasonable doubt that Mr. Cash did not act in self-defense when he killed Mr. Devine.  From the evidence presented at trial no reasonable jury could have found that the State met its burden.

The trial testimony was nearly unanimous that Mr. Devine was the initial aggressor in his fight with Mr. Cash. Indeed, every witness testified that Mr. Devine interjected himself into the struggle between Mr. Cash and Mr. Davis. There was virtually unanimous testimony that Mr. Devine's first encounter with Mr. Cash was when he approached Mr. Cash and punched him (with what Mr. Cash believed was a weapon) so hard that Mr. Cash fell to the ground and began bleeding. The only distinction came from Mr. Davis who testified that Mr. Devine "shoved" Mr. Cash and also claimed that he never saw Mr. Devine punch Mr. Cash in the face—even though the other witnesses did and Mr. Cash had facial injuries

showing he had been assaulted. Indeed, this is a photograph of Mr. Cash after the assault showing the injury to his face:



There was also no evidence presented at trial to dispute Mr. Cash's characterization of Mr. Devine's punch to the face as a massive blow that stunned Mr. Cash and made him believe that Mr. Devine had a weapon that caused the impact. It was only after Mr. Devine punched Mr. Cash in the face with what Mr. Cash believed was a weapon, that Mr. Cash pulled his work knife out of his pocket and stabbed Mr. Devine one time to prevent another attack. Moreover, various witnesses testified that they heard Mr. Davis tell Mr. Devine to bring some kind of weapon out of the car, which also supported Mr. Cash's belief that Mr. Devine had a weapon.

Under these facts, the State failed present sufficient evidence to sustain a second-degree murder conviction and failed to meet their burden of proving beyond a reasonable doubt that Mr. Cash did not act in self-defense when he used deadly force against Mr. Devine after Mr. Devine approached Mr. Cash and assaulted him with what Mr. Cash believed was a weapon. The State could not meet its burden given: (1) the undisputed testimony at trial that Mr. Devine was the initial aggressor when he got out of the car and joined Mr. Davis in the fight against Mr. Cash; (2) Mr. Cash's statement that Mr. Devine hit him so hard that Mr. Cash

believed Mr. Devine used a weapon; (3) the witnesses testimony that Mr. Davis told Mr. Devine to get a weapon out of the car and after Mr. Devine hit Mr. Cash in the face Mr. Cash lost his balance and began bleeding; (4) the photographic evidence showing Mr. Cash's injuries after being hit by Mr. Devine.

As there was insufficient evidence to support a second-degree murder conviction, and the State failed to prove beyond a reasonable doubt that Mr. Cash did not act in self-defense, this Court should vacate the conviction and order a new trial. *See Jackson v. Virginia*, 443 U.S. 307 (1979).

**Ground Five: Mr. Cash's trial counsel was ineffective when he failed to challenge the sufficiency of the evidence to support a conviction for second-degree murder.**

**Statement of exhaustion:**

Mr. Cash has not fairly presented this claim to the Nevada state courts.

**Statement in support of claim:**

As detailed in Claim Four above, there was insufficient evidence to convict Mr. Cash of second-degree murder. Trial counsel also should have moved for a judgment of acquittal based on the lack of evidence to sustain a second-degree murder conviction, but he failed to do so. Trial counsel's deficient performance prejudiced Mr. Cash as Mr. Cash was convicted of a crime that was unsupported by the evidence, and ultimately sentenced to life without the possibility of parole. This Court should grant Mr. Cash relief and order a new trial.

**Ground Six: Trial Counsel's errors, considered cumulatively, prejudiced Mr. Cash.**

**Statement of exhaustion:**

Mr. Cash exhausted this claim (or a similar claim) in state post-conviction proceedings.

**Statement in support of claim:**

Mr. Cash incorporates into this claim all facts alleged *supra*. Trial counsel's errors warrant relief whether considered individually or cumulatively. Trial counsel

failed to prepare for trial, failed to call favorable witnesses, failed to elicit favorable testimony at trial, failed to object to the prosecutors' improper closing argument, and failed to challenge the sufficiency of the evidence to support a second-degree murder conviction. These failures adversely affected the outcome of the proceedings. But for trial counsel's failures, there is a reasonable probability of a different result at trial.

Accordingly, Mr. Cash requests that the Court grant his petition and release him from unconstitutional confinement.

### PRAYER FOR RELIEF

Accordingly, Thomas Cash respectfully requests that this Court:

1.    Issue a writ of habeas corpus to have Thomas Cash brought before the Court so that he may be discharged from his unconstitutional confinement;

2.    Conduct an evidentiary hearing at which proof may be offered concerning the allegations in this amended petition and any defenses that may be raised by Respondents; and

3.    Grant such other and further relief as, in the interests of justice, may be appropriate.

Dated February 20, 2024.

Respectfully submitted,

Rene L. Valladares
Federal Public Defender

*/s/ Margaret Lambrose*

Margaret Lambrose
Assistant Federal Public Defender

**DECLARATION UNDER PENALTY OF PERJURY**

I declare under penalty of perjury under the laws of the United States of America and the State of Nevada that the facts alleged in this petition are true and correct to the best of counsel's knowledge, information, and belief.

Dated February 20, 2024.

Respectfully submitted,

Rene L. Valladares
Federal Public Defender

*/s/ Margaret Lambrose*
Margaret Lambrose
Assistant Federal Public Defender